HACKER ET AL. *v.* FRY, TRUSTEE.

(No. 83-CV-0072—Decided January 18, 1984.)

Court of Common Pleas of Clermont County.

*Donald W. White,* for plaintiffs.
*Charles H. Tobias, Jr.,* for defendant.

RINGLAND, J. This matter came for hearing on plaintiffs' motion for summary judgment on December 19, 1983.

The court finds that the uncontroverted facts indicate that plaintiffs, Hazel Hacker et al., were owners of property located in Ohio Township; that, as admitted, plaintiffs conveyed real estate to defendant, Philip S. Fry, and to secure the purchase of the real estate defendant executed a promissory note in the amount of $550,000 with interest; that the terms of the note indicated that defendant promised to pay monthly payments of principal and interest in the

sum of $4,826.70, due on the first of each month; and further, that the note was secured by a mortgage.

The facts uncontrovertedly further indicate that case No. 82-CV-0920 was filed by Hazel Hacker et al. against defendant in the Court of Common Pleas of Clermont County, based upon failure of defendant to pay real estate taxes. The suit was filed prior to January 1, 1983. While case No. 82-CV-0920 was pending, negotiations were had between counsel for plaintiffs and counsel for the defendant. During the negotiations of this case no agreements were made by plaintiffs or their counsel to forego any future legal actions which had not accrued. On January 31, 1983, a stipulation of dismissal was executed by counsel for plaintiffs and filed with the court dismissing case No. 82-CV-0920 with prejudice. The stipulation of dismissal had been dated as of January 26, 1983 and was signed by both counsel for the defendant and plaintiffs. It is uncontroverted that all negotiations concerning this case dealt with the issues in that complaint and with no other potential cause of action.

On February 1, 1983 a complaint was filed by the same plaintiffs against the same defendant based upon failure to pay the required monthly January payment of the note as previously set forth. The note contained a specific provision that:

"There shall be default in the payment of any said installment when due and if the same should remain unpaid for a period of thirty days * * * then the unpaid balance with principal hereof together with interest accrued thereon shall become immediately due and payable at the option of the holder of this note."

The facts further indicate uncontrovertedly that the payment that was due January 1st was tendered but that the check was deposited on January 4th, and that it was dishonored on or about January 10th, due to insufficient funds; that as of the date of the issuance of the check there were insufficient funds in the account of the defendant; and that at no time was January's monthly payment made within the thirty days due. A disputed fact does occur as to whether or not defendant was notified of the dishonor within thirty days. Further, it is uncontroverted that the check was not again presented by plaintiffs within thirty days from January 1st.

A party moving for summary judgment will be entitled to such judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1 [24 O.O.3d 1]; *Fry* v. *Reid* (Dec. 30, 1983), Madison App. No. CA 83-07-027, unreported. Therefore the first issue to be addressed by this court is whether the alleged failure to notify defendant of the dishonor of the check either by the bank or the plaintiffs is material; or put in another way, does the payee have a duty to notify the drawer of a check which has been dishonored?

The Uniform Commercial Code embodied under R.C. 1303.63 and 1303.66 does not require the holder of a dishonored check to give notice of the dishonor when the party to be charged has dishonored the instrument himself. See Official Comment 4 to R.C. 1303.66; and Farnsworth, Cases and Material on Commercial Paper (1968), Foundation Press Inc. While this may be dispositive of the requirement of duty to notify Fry, nevertheless it is the opinion of this court that the requirement of notice under Article 3 of the U.C.C., as well as R.C. Chapter 1303, commercial paper, was specifically intended by the legislature for the protection · of the holder in due course. As indicated under the editor's analysis in Page's Ohio Revised Code Annotated to R.C.

1303.01: "There would be no need for R.C. Chapter 1303. [UCC Art. 3], were it not for the concept of the 'holder-in-due-course' defined at R.C. § 1303.31." In short, therefore while the determination of the requirement of notice under the U.C.C. may have some bearing, nonetheless the issue before the court is not solely a negotiable instrument issue. Essentially this is still a contract matter where there has been an allegation of breach or failure of performance by the defendant. The law is quite clear that a notice of failure to perform or demand for payment is unnecessary where the obligation to perform is complete and unconditional. There is a duty to perform and a liability for the breach of a binding promise. See *Thomas* v. *Matthews* (1916), 94 Ohio St. 32. There is no requirement, therefore, that the plaintiffs demand payment of the January payment, and when found to be insufficient or nonexistent, make at that time a demand for payment or notice of the failure to perform. Certainly there are no terms in the contract which require notice upon failure to make payment in the proper manner or mode. Therefore defendant's defense of no timely notice of dishonor is not well-taken.

The second issue raised by defendant is whether the previous entry of dismissal with prejudice was intended to cover all issues which may arise "in futuro." Stated in another manner, when did the cause of action arise in the case at hand? The court agrees with plaintiffs' argument that the cause of action did not accrue until the specific terms of the contract were breached; *i.e.,* after thirty days expired and no full payment was made to plaintiffs. The affidavits are uncontroverted that the intention of the parties was not to bind either party to any action which accrued in the future and therefore the court finds that the prior dismissal was not a bar to this present action.

The court further finds that while an offer to purchase the real estate may have some effect on this court's determination of the length of equity of redemption that it is not material or relevant to the issue before it on the motion for summary judgment. Further, based upon the affidavits attached the court finds that there was no fraud, misrepresentation or wrongdoing on behalf of the plaintiffs.

For all of the above reasons, the court hereby determines and so holds that the plaintiffs' motion for summary judgment is well-taken and hereby orders judgment for plaintiffs herein.

*Judgment for plaintiffs.*